IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID LACY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-0450-BD |
| | § | |
| NAVARRO COUNTY SHERIFF'S OFFICE, ET AL. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Defendant Grady C. Shaw, a physician under contract with Navarro County, Texas, to provide medical services to inmates, has filed a motion for summary judgment in this prisoner civil rights action brought under 42 U.S.C. § 1983. In his *pro se* complaint and interrogatory answers,[1] plaintiff alleges that he was denied medical care for schizophrenia during the eight months he was incarcerated in the jail awaiting trial on unspecified criminal charges. Although plaintiff was treated for depression and anxiety, he alleges that defendant ignored his complaints about "hearing voices" and refused to prescribe medication for schizophrenia. Plaintiff also complains about a one-month delay in receiving treatment for insomnia. Defendant now moves for summary judgment on the grounds that there is no evidence of deliberate indifference and that the claims against him are barred by qualified immunity. Plaintiff has filed a written response to the motion, but has not submitted any summary judgment evidence to controvert the evidence tendered by defendant. The issues have been fully briefed and argued by the parties, and the motion is ripe for determination.

---

[1] Although the court appointed a lawyer to represent plaintiff, counsel did not file an amended complaint.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment who does not have the burden of proof at trial bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id., quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). Once the movant meets this burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

The due process clause of the Fourteenth Amendment to the United States Constitution requires the state to provide for the "basic human needs" of pretrial detainees. *See Hare v. City of Corinth*, 74 F.3d 633, 639-40 (5th Cir. 1996) (citing cases). This includes the right to adequate medical care. *Id.* In order to establish a constitutional violation, a detainee must show that the defendant acted with deliberate indifference to his serious medical needs. *Id.* at 647-48. This, in turn, requires proof that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Id.* at 648, *citing Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994). Deliberate indifference is an extremely high standard to meet. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A pretrial detainee must show that the defendant "refused to treat him, ignored his

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). A delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Nor does an incorrect diagnosis or a mere disagreement over the proper course of medical treatment constitute deliberate indifference. *See Domino*, 239 F.3d at 756; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

At oral argument, counsel for plaintiff identified two disputed fact issues which he contends prevent the court from granting summary judgment in favor of defendant: (1) whether plaintiff told defendant that he was "hearing voices," a symptom of schizophrenia that should have been treated with appropriate medications; and (2) whether defendant timely prescribed medication for plaintiff's insomnia. With respect to the first issue, the court agrees that plaintiff complained to jail officials about "hearing voices." (*See, e.g.* Def. MSJ App. at 73). However, there is no medical evidence that this subjective complaint was suggestive of a diagnosis of schizophrenia. In his affidavit, defendant testified that plaintiff "has never shown any sign or described to me any symptom of schizophrenia. His thinking is not disorganized. He has never shown any evidence of hallucinations, and he is not delusional." (*Id.* at 352). More compelling is the report of Waseem Ahmed, M.D., an independent medical expert who was appointed by the court with the consent of the parties to interview plaintiff and evaluate the quality of his medical treatment. At the interview, plaintiff told Dr. Ahmed that his symptoms of mental illness included mostly "seeing black spots around the corner of his eyes" and "hear[ing] voices," which plaintiff described as a "whisper." (*Id.* at 362). Dr. Ahmed dismissed the significance of plaintiff's self-reported symptoms in his report:

> [T]he symptoms of "seeing black spots" and subjective report of hearing voices, only as whisper heard occasionally, is highly uncharacteristic of genuine psychosis. Review of medical record indicates that there were no notations of any objective symptoms of psychosis. At the time of interview, Mr. Lacy was also not on any medications which may have obscured any objective symptoms. Throughout during [sic] the interview there were no indications, presence, or any symptoms of psychosis. There is also significant history of substance abuse which correlates with past presence of psychotic symptoms, particularly Methamphetamine and Alcohol. The symptoms with intra venous use of drugs could last longer than four weeks even when the use of drugs is discontinued. The report of this type of visual and auditory hallucination is consistent with false symptoms or is uncharacteristic of genuine psychotic symptoms. If these symptoms are used to have secondary gain, such as addicting medications, it is considered [a] symptom of Malingering. Malingering is that an individual fakes symptoms of medical or mental illness for secondary gain. Mr. Lacy's insistence to have him prescribed Seroquel is consistent with medication abuse by an incarcerated population. In correctional Psychiatry, it is documented in scientific literature, that Seroquel has been a medication that is being abused by inmates. Incarcerated inmates with history of drug abuse seek out medications, which cause them to feel high or sedated. Seroquel is one of the medications which is considered to have both of these effects. It has become a practice in correctional psychiatry, not to prescribe Seroquel, unless there is significant and clear indication for therapeutic benefits. Demand of Xanax and Seroquel is most likely "drug seeking" behavior. Considering past history of Alcohol abuse and dependence as well as Methamphetamine abuse, clinically it appears to be safer and in the best interest of Mr. Lacy that he was not prescribed Xanax and Seroquel.

(*Id.* at 366). Dr. Ahmed went on to conclude that plaintiff's treatment while incarcerated in the Navarro County Jail was in accordance with the standards of mental health practices, that plaintiff received therapeutic benefits from his treatment, and that the treatment plan and decisions made by defendant were appropriate. (*Id.* at 367). Without any controverting evidence from a qualified medical expert, there is no basis for concluding that defendant treated plaintiff incorrectly, much less that he acted intentionally or with wanton disregard to plaintiff's serious medical needs. *See, e.g. Wood v. City of Lancaster*, No. 06-3033, 2009 WL 80306 at *18-19 (E.D. Pa. Jan. 13, 2009)

(granting summary judgment in favor of doctor who diagnosed prisoner as non-schizophrenic malingerer); *Campbell v. Sikes*, 169 F.3d 1353, 1367 (11th Cir. 1999) (affirming summary judgment in favor of doctor who failed to diagnose and treat prisoner for bipolar disorder).

Plaintiff further alleges that he was denied treatment for insomnia for approximately one month. The summary judgment evidence, viewed in the light most favorable to plaintiff, shows that defendant agreed to prescribe sleep medication for plaintiff on February 20, 2008, but did not write a prescription for Doxepin until March 20, 2008. (*See id.* at 62, 70). Even if this one-month delay was attributable to deliberate indifference, insomnia, or the reduced ability to fall asleep, does not amount to a "serious medical need." *See Wiley v. Blanco*, No. 06-3512, 2007 WL 1747019 at *13 (E.D. La. Jun. 15, 2007) (citing cases). Nor has petitioner shown that he suffered substantial harm as a result of the delay in receiving sleep medication. *See Burnette v. Bureau of Prisons*, 277 Fed.Appx. 329, 332, 2007 WL 4328808 at *2 (5th Cir. Dec. 10, 2007) (affirming dismissal of medical care claim as frivolous where prisoner failed to identify any harm resulting from the delay).

Finally, defendant seeks summary judgment on his qualified immunity defense. Jail officials are immune from suit for discretionary acts performed in good faith while acting within the scope of their authority unless their conduct violates a "clearly established . . . constitutional right [ ] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Since plaintiff has not proved a constitutional violation, this terminates the qualified immunity analysis. *See Freeman v. Bowles*, No. 3-01-CV-1871-BD, 2002 WL 1359717 at *3 (N.D. Tex. Jun. 18, 2002) (declining to address issue of qualified immunity where plaintiff failed to establish underlying constitutional violation).

## CONCLUSION

For these reasons, defendant's motion for summary judgment [Doc. #51] is granted. The court will dismiss this action with prejudice by final judgment filed today.[2]

SO ORDERED.

DATED: April 28, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[2] The court previously dismissed plaintiff's claims against two other defendants--Navarro County Jail Medical Department and Captain Tommy Nichols. (*See* Doc. #20). Together, the judgment granting summary judgment in favor of Dr. Grady Shaw and the judgment dismissing the other defendants dispose of all claims brought by plaintiff.